**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **JOSEPH M. KEHOE,**<br>*Plaintiff,*<br>v.<br>**HEALTH AND COMFORT HOME CARE AGENCY, *et al.*,**<br>*Defendants.* | Civil Action No. 25-18004 (ZNQ) (RLS)<br><br>**OPINION** |

**QURAISHI, District Judge**

**THIS MATTER** comes before the Court upon a Motion to Dismiss Plaintiff Joseph M. Kehoe's Amended Complaint (the "Motion," ECF No. 8) filed by Defendant C&M Health Services, LLC d/b/a Health and Comfort Homecare i/p/a Health and Comfort Home Care Agency ("HCHCA"). HCHCA filed a brief in support of the Motion ("Moving Br.," ECF No. 8.) Plaintiff Joseph M. Kehoe ("Plaintiff" or "Kehoe") filed opposition ("Opp'n Br.," ECF No. 10), to which HCHCA replied ("Reply Br.," ECF No. 15.) [1]

The Court has carefully considered the parties' submissions and decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, HCHCA's Motion will be **GRANTED IN PART and DENIED IN PART**.

[1] HCHCA did not paginate the Moving Brief, and Plaintiff did not paginate his Reply Brief. The Court therefore cites to the page numbers generated by the CM/ECF system.

## II. BACKGROUND AND PROCEDURAL HISTORY

Plaintiff purportedly suffers from numerous medical conditions that qualify him as an individual with a disability under N.J.S.A. § 10:5-5(q) and the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"). (Moving Br. at Ex. A, ECF No. 9-1, First Amended Complaint ("FAC") at ¶¶ 2-3.)[2] Beginning in or around February 2025, because of these conditions Plaintiff became eligible for Home Health Aide Services ("Home Aid Services") through his primary insurance company, UHC. (*Id.* at ¶ 1.) On or about August 4, 2025, Natasha Brooks ("Ms. Brooks"), a care manager at UHC, authorized Plaintiff to receive 14 hours of Home Aid Services per week. (*Id.* at ¶ 4.) On August 13, 2025, Ms. Brooks confirmed to Plaintiff that HCHCA had been authorized by UHC to perform his Home Aid Services. (*Id.* at ¶ 5.) Plaintiff thereafter had Posterior Cervical Decompression and Fusion surgery on August 19, 2025, and later underwent subsequent surgery on September 16, 2025 due to complications from the initial surgery. (*Id.* at ¶¶ 6-7.)

On September 12, 2025, Plaintiff met with Oksana[3], a caregiver from HCHCA to discuss Plaintiff's Home Aid Services; they allegedly agreed that Plaintiff's aide would begin later that month on September 22nd or 23rd, and Plaintiff made Oksana aware that his Home Aid Services needed to include assistance with caring for his pets (cats) — Oksana did not express any issue with these requests. (*Id.* at ¶ 8.) On September 22, 2025, Irene, an RN supervisor at HCHCA, came to Plaintiff's home to discuss and formulate a plan of care. (*Id.* at ¶ 10.) Irene informed Plaintiff that HCHCA was only contracted to aid him, and his pets were not HCHCA's

[2] For reasons unclear, Removing Defendant United Healthcare Services, Inc. attached what appear to be two copies of the Amended Complaint to its Notice of Removal. *See* ECF No. 1-1 at CM/ECF pages 50–70, 71–91. The Court refers instead to the copy of the Amended Complaint submitted by HCHCA as part of its Motion to Dismiss.

[3] Plaintiff does not identify Oksana by her full name in the FAC, and the parties fail to further identify her in their briefs.

responsibility. (*Id.*) Meanwhile, Oksana was retrieving Plaintiff's medication from a pharmacy. (*Id.* at ¶ 11.) Plaintiff and Irene signed a "Service Agreement," which Plaintiff filed as Exhibit A, ECF No. 10-1, in support of his opposition to HCHCA's Motion. In relevant part, the Service Agreement provides "Service Termination/Discharge Conditions: I understand that the Agency's homemaker services might be terminated for any of the following reasons: Goals achieved. Non-compliance with care plan. Funds exhausted. A move from the geographical area. Rehabilitative potential achieved. Unsafe environment. Services interrupted for more than 30 days. Client's refusal of Agency's services. Client's ability to assume responsibility for own care. Agency's inability to meet client's needs. Hospitalization." (Opp'n Br., ECF No. 10-1, Ex. A, at "Service Agreement".) The Service Agreement dictates that Plaintiff "will receive 14 hours of service 5 days per week." (*Id.*) Plaintiff and Irene also discussed a Plan of Care, which provides in relevant part that HCHCA planned to provide the following services to Plaintiff on each day of service: ambulation, meal preparation and serving assistance, light cleaning of patient's personal area, laundry, and making the bed. (*Id.* at "Plan of Care".) The Plan of Care is signed by Plaintiff, "RN Supervisor" and HCHCA. (*Id.*)

Thus, Plaintiff alleges that "[t]he contract was mutually signed and [he] expected service to commence the following day." (*Id.* at ¶ 12.) However, the following day an HCHCA caregiver did not come to Plaintiff's residence to provide Home Aid Services. (*Id.* at ¶ 13.) Instead, on September 26, 2025, Plaintiff received a phone call from Ms. Brooks, wherein she informed Plaintiff that HCHCA decided not to provide him with Home Aid Services, and that it would likely take at least another week before another agency could be authorized to provide such services. (*Id.* at ¶¶ 14, 16.) Plaintiff alleges that HCHCA did not have cause to terminate the contract. (*Id.* at ¶ 15.) As of October 20, 2025, Plaintiff still had not received any Home Aid Services, and as a result

has continued to suffer mentally and physically while attempting to care for his home, pets, and personal needs. (*Id.* at ¶¶ 16-19.) Plaintiff also alleges that HCHCA's license expired on November 18, 2013 and has not been renewed (*Id.* at ¶ 20.) Plaintiff alleges that HCHCA "refused or withheld services in part because of conditions related to the presence of domestic animals and household odor, rather than any legitimate health-or-safety restriction[,] notwithstanding that HCHCA's "own website advertises 'pet care' and similar support services[.]" (*Id.* at ¶ 83.)

On October 9, 2025, Plaintiff filed suit in the Middlesex County Superior Court of New Jersey. (ECF No. 1-1, p. 9–19.) On October 20, 2025, Plaintiff filed the FAC (ECF No. 1-1, p. 50-70.) On November 26, 2025, Defendant United Healthcare Services Inc., on consent of Plaintiff and HCHCA, filed a notice of removal in the United States Federal Court for the District of New Jersey. On December 10, 2025, HCHCA answered and filed a crossclaim against UHS. (ECF No. 4.) On February 23, 2026, HCHCA filed the present Motion, and Plaintiff filed an untimely opposition over one month thereafter on March 27, 2026 (ECF No. 10.) On April 8, 2026, HCHCA filed its reply to Plaintiff's opposition. (ECF No. 15.) On June 11, 2026, the Court entered a Stipulation and Order by and between the parties dismissing UHS with prejudice. (ECF No. 18.) HCHCA's present Motion remains.

## III. SUBJECT MATTER JURISDICTION

The Court has subject matter jurisdiction over Plaintiff's claims under federal law pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over his claims under state law pursuant to 28 U.S.C. § 1367.

## IV. LEGAL STANDARD

A district court may grant a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. When considering a motion

under 12(b)(6), the "defendant bears the burden of showing that no claim has been presented." *Hedges v. U.S.*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)). Moreover, the court must accept as true all the plaintiff's well-pleaded factual allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court, however, may ignore legal conclusions or factually unsupported accusations that merely state the defendant unlawfully harmed the plaintiff. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 663).

"To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1196 (3d Cir. 1993); *see also Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). "However, an exception to the general rule is that a 'document *integral to or explicitly relied* upon in the complaint' may be considered 'without converting the motion to dismiss into one for summary judgment.'" *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1426 (3d Cir. 1997).[4]

[4] The Court considers the Service Agreement attached as Exhibit A to Plaintiff's opposition papers, ECF. No. 10-1 (the "Service Agreement"), at this stage because Plaintiff relies on it in the FAC. *See Rogan v. Giant Eagle, Inc.*, 13 F. Supp. 2d 777, 780-81 (W.D. Pa. 2000) ("[A] plaintiff's failure to attach or cite documents explicitly relied on or integral to the complaint does not preclude the court, when considering a motion to dismiss, from reviewing the text of these extrinsic documents.") (citing *Rowe v. Morgan Stanley Dean Witter*, 191 F.R.D. 398 (D.N.J.1999)).

## VI. DISCUSSION

HCHCA moves to dismiss on four bases: (1) there was no enforceable contract between Plaintiff and HCHCA; (2) Plaintiff never purchased services from HCHCA; (3) HCHCA did not induce Plaintiff to rely on any representations; and (4) HCHCA did not discriminate against Plaintiff based on his disability. (Moving Br. at 8–10.) Though not included in its Statement of Facts, HCHCA also moves to dismiss Plaintiff's negligence/ negligent abandonment claim (Count III) on the grounds that HCHCA did not owe or violate any duty of care to Plaintiff. (*Id.* at "Legal Argument", "Point II".) Plaintiff insists that he has alleged facts sufficient to plausibly establish each of his causes of action because they "are expressly based on a written agreement between the parties." (Opp'n Br. at 5–7 (citing Ex. A, ECF No. 10-1).) For the reasons set forth below, the Court agrees with HCHCA's arguments to dismiss Plaintiff's contract claims but rejects HCHCA's motion to dismiss Plaintiff's remaining claims.

Plaintiff asserts that New Jersey law governs this dispute (Opp'n Br. at 1), and HCHCA does not dispute his assertion. Moreover, Plaintiff resides in New Jersey, HCHCA's relevant office is in New Jersey, and all of Plaintiff's claims arise out of conduct that occurred in New Jersey. (FAC at "Parties".) Therefore, the Court will apply New Jersey law to assess the sufficiency of Plaintiff's claims, with the exception of Counts VIII and X, which allege violations of federal law.

**A. COUNTS I & II – BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

In attacking Plaintiff's claims for breach of contract and breach of the covenant of good faith and fair dealing, HCHCA contends that Plaintiff fails to allege an enforceable contract. (Moving Br. at 12–14.) In opposition, Plaintiff avers that HCHCA "accepted Plaintiff as a client, completed intake and onboarding, developed a plan of care, mutually executed the relevant documentation, and agreed to provide specified services." (Opp'n Br. at 5–7.) Plaintiff argues that, considering the Service Agreement, the questions of whether an exchange of consideration occurred or services commenced are factual disputes that go beyond the pleading stage. (*Id.*) The Court agrees with Defendant.

1. Breach of Contract

To state a claim for breach of contract in New Jersey, a plaintiff must plausibly allege: (1) "that the parties entered into a contract containing certain terms"; (2) "that [the plaintiff] did what the contract required [her] to do"; (3) that [the defendant] did not do what the contract required [it] to do, defined as a breach of contract"; and (4) "that [the defendant's] breach, or failure to do what the contract required, caused a loss to the plaintiff [ ]." *Globe Motor Co. v. Igdalev*, 139 A.3d 57, 64 (N.J. 2016) (internal quotation marks and citation omitted). To allege a valid contract under New Jersey law, a plaintiff must plausibly plead (1) mutual assent, (2) offer and acceptance, and (3) consideration. *See Fazio v. Altice USA*, 337 A.3d 304, 311 (N.J. 2025) ("[T]he fundamental elements of contract formation" are "mutual assent, offer and acceptance, [and] consideration.").

Here, as a threshold matter, HCHCA disputes the existence of a valid contract. It appears to acknowledge that there was an offer and acceptance insofar as it concedes that "Plaintiff consent[ed] to services being provided," and HCHCA "consented to providing service." (Moving Br. at 13.) That admission is consistent with Plaintiff's allegation that on September 22, 2025

"[t]he contract was mutual signed and [he] expected service to commence the following day." (FAC at ¶ 12.) Indeed, the September 22, 2025 meeting between HCHCA's RN supervisor, Irene, and Plaintiff, and the execution of the Service Agreement during that meeting, constitute textbook offer and acceptance. This evidences the requisite "meeting of the minds" under New Jersey law. *See Morton v. 4 Orchard Land Trust*, 849 A.2d 164, 170 (N.J. 2004) ("A written contract is formed when there is a 'meeting of the minds' between the parties evidenced by a written offer and an unconditional, written acceptance.").

HCHCA instead disputes the existence of a contract in that "[t]here was no exchange of consideration between the parties." (Moving Br. at 13.) According to Plaintiff, "Defendant's assertions that no consideration was exchanged or that services did not commence are factual disputes and competing interpretations of the parties' agreement, not pleading deficiencies." This is incorrect. It is Plaintiff's burden to plead the requisite elements of his claim for breach of contract. As set forth above, first among them is the existence of a valid contract, which requires consideration. Plaintiff has not alleged consideration at all, much less plausibly done so.[5] For that reason, the Court finds that Plaintiff fails to state a claim for breach of contract.

Count I will therefore be dismissed without prejudice.

2. Breach of the Covenant of Good Faith and Fair Dealing

It is well-settled that "[a] covenant of good faith and fair dealing is implied in every contract in New Jersey . . ." *Wilson v. Amerada Hess Corp.*, 168 N.J. 236, 244 (2001). That implied covenant dictates that a party, even if it does not breach an express term, cannot act in bad faith to

[5] As currently pled, Plaintiff's breach of contract claims is nearer to one for promissory estoppel, which does not require consideration. To plead promissory estoppel under New Jersey law, a plaintiff must allege; "(1) a clear and definite promise; (2) made with the expectation that the promisee will rely on it; (3) reasonable reliance; and (4) definite and substantial detriment." *Dandrea Produce, LLC v. Wakefern Food Corp.*, Civ. No. 25-14722, 2026 WL 1354279, at *4 (D.N.J. May 14, 2026) (citing *Toll Bros., Inc. v. Bd. of Chosen Freeholders of Burlington*, 194 N.J. 223, 253 (2008) and *Goldfarb v. Solimine*, 245 N.J. 326, 339–40 (2021)).

interfere with the other's ability to enjoy the fruits of the contract. *Id.*; *see also Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs.*, 182 N.J. 210, 225 (2005).

To recover for breach of the implied covenant, a plaintiff must prove that: (1) a contract exists between the parties; (2) the plaintiff performed under the terms of the contract; (3) the defendant acted in bad faith with the purpose of depriving the plaintiff of rights or benefits under the contract; and (4) the defendant's actions caused the plaintiff to sustain damages. *TBI Unlimited, LLC v. Clear Cut Lawn Decisions, LLC*, 2014 WL 3853900, at *3 (D.N.J. Aug. 5, 2014) (citing *Wade v. Kessler, Inst.*, 778 A.2d 580, 586 (N.J. Sup. Ct. App. Div. 2001), *aff'd as modified*, 798 A.2d 1251 (2002)); *Pactiv Corp. v. Perk-Up, Inc.*, 2009 WL 2568105, at *12–13 (D.N.J. 2009).

HCHCA asserts that Plaintiff's breach of the implied covenant of good faith and fair dealing claim must be dismissed, as there was no contract between the parties. (Moving Br. at 12–14.) As the Court has already determined that Plaintiff has failed to allege a valid contract between the parties, the Court agrees — Plaintiff's breach of the implied covenant of good faith and fair dealing claim cannot be maintained.

Count II will therefore be dismissed without prejudice.

### B. COUNTS III & XI – NEGLIGENCE AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

To state a claim for negligence under New Jersey law, a plaintiff must assert that: (1) the defendant owed plaintiff a duty; (2) there was a breach of that duty; (3) the breach proximately caused the injury, and (4) damages. *Keith v. Truck Stops Corp. of Am.*, 909 F.2d 743, 745 (3d Cir. 1990); *Lax v. City of Atl. City*, Civ. No. 19-7036, 2019 WL 7207472, at *4 (D.N.J. Dec. 27, 2019). The question of whether a duty exists is a matter of law properly decided by the Court. *Strachan v. John F. Kennedy Memorial Hosp.*, 538 A.2d 346, 349 (N.J. 1988). Determination of the existence of a duty "is largely a question of fairness or policy." *Id.* "The inquiry involves a

weighing of the relationship of the parties, the nature of the risk, and the public interest in the proposed solution." *V.C. by Costello v. Target Corp.*, 454 F. Supp. 3d 415, 423 (D.N.J. 2020). "To establish a claim of negligent infliction of emotional distress ["NIED"], [a] plaintiff must show that: (1) defendant owed a duty to plaintiff; (2) defendant breached that duty; (3) plaintiff suffered severe emotional distress; and (4) defendant's breach proximately caused plaintiff's emotional distress." *Johnson v. City of Hoboken*, 476 N.J. Super. 361, 375-76 (App. Div. 2023). A NIED claim also requires a showing of severe emotional distress. *Id.* at 376.

1. <u>Negligence</u>

HCHCA challenges Plaintiff's negligence claim on the basis that HCHCA owed no duty to Plaintiff "based on the relationship of the parties." (Moving Br. at 15.) In support, HCHCA says that it is only contracted by UHC, Plaintiff's insurance company, and was assigned to Plaintiff to potentially provide services. (*Id.*) To that end, HCHCA asserts that it can choose to accept or decline to provide such services, and that "an initial consultation took place, but no commencement of services began." (*Id.*) In essence, HCHCA makes a privity argument. While the Court has already found Plaintiff's allegations insufficient to allege a breach of contract, Plaintiff does allege that HCHCA was authorized by UHC to perform Home Aid Services for Plaintiff, (FAC ¶ 5), and HCHCA began providing such services, (*id.* ¶ 11.) Consistent with these allegations, HCHCA appears to even concede that "Plaintiff consent[ed] to services being provided," and HCHCA "consented to providing service." (Moving Br. at 12–14.) Thus, as Plaintiff correctly points out, the FAC "alleges that Defendant undertook to provide home health aide services, knew of Plaintiff's post-surgical condition and need for assistance, and failed to provide those services after accepting the assignment[.]" (Opp'n Br. at 8–9.)

It is well-settled under New Jersey law that an independent contractor is liable to a third party who has been injured because of the contractor's negligence in the performance of its work for the contractee in an action based in tort. *Marvin Safe Co. v. Ward*, 46 N.J.L. 19, 25 (1884) ("There is a class of cases in which a person performing service or doing work under a contract may be held in damages for injuries to third persons, occasioned by negligence or misconduct connected with the execution of the contract; but these are cases where the duty or liability arises independent of the contract."). The Court finds Plaintiff's allegations sufficient to establish that HCHCA assumed a duty of care to him, that HCHCA breached that duty, and that Plaintiff suffered damages because of HCHCA's breach — Plaintiff alleges that HCHCA met with Plaintiff two times, mutually signed a Service Agreement with Plaintiff (thereby consenting to provide Home Aid Services), agreed to a Home Aid Service start date, commenced services by picking up Plaintiff's medicine, and then abruptly failed to provide services for four days before providing Plaintiff with any notice that it did not intend to continue the parties' relationship.

HCHCA's Motion to Dismiss Count III of the FAC will be denied.

2. <u>Negligent Infliction of Emotional Distress</u>[6]

Plaintiff fashions his NIED claim on the theory that when HCHCA declined to provide Home Aid Services to him it was reasonably foreseeable that Plaintiff would be, and was, left isolated and unattended in a vulnerable, post-surgery condition without appropriate Home Aid Services, and that such conditions caused him severe emotional distress. "Whether the defendant has a duty of care to the plaintiff depends on whether it was foreseeable that the plaintiff would be seriously, mentally distressed." *Lascurain v. City of Newark*, 349 N.J. Super. 251, 277 (App. Div.

[6] The Court considers Plaintiff's claim as a direct claim of NIED because his allegations do not involve any injury to another. *Lascurain v. City of Newark*, 349 N.J. Super. 251, 278 (App. Div. 2002).

2002). "By circumscribing the cause of action with an elevated threshold for liability and damages, *courts have authorized legitimate claims* while eliminating those that should not be compensable." *Buckley v. Trenton Saving Fund Soc.*, 111 N.J. 355, 367 (1988) (emphasis added). The foreseeability of an injury is particularly important for an NIED claim because it

> reflects the concern over the genuineness of an injury consisting of emotional distress without consequent physical injury. In these situations, there must be "an especial likelihood of genuine and serious mental distress, arising from special circumstances, which serves as a guarantee that the claim is not spurious." In emotional distress cases, there has been "a constant concern about the genuineness of the claim."

*Decker v. Princeton Packet, Inc.*, 116 N.J. 418, 429-30 (1989) (quoting W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on the Law of Torts,* § 54 at 362 (5th ed.1984)).

The Court is satisfied that Plaintiff has alleged such "special circumstances" to establish at this stage that his NIED claim is not so spurious as to warrant dismissal. Plaintiff alleges that HCHCA's decision not to provide Home Aid Services left him in isolation without any ability to receive those services. In addition, Plaintiff had already met with HCHCA representatives on multiple occasions to discuss his immediate need for such services, a start date of September 22, 2025 had been agreed-upon, HCHCA had begun rendering services (by picking up Plaintiff's medicine from the pharmacy), and at that time Plaintiff was purportedly in a vulnerable, disabled condition after receiving the second of two surgical procedures on September 16, 2025. (FAC at ¶ 6-19.) At no time prior to HCHCA's notification that it would not be providing Plaintiff services on September 26th was Plaintiff informed that services may not proceed or that he would need an alternative Home Aid Services provider. (*Id.*) Plaintiff's approved care needs were also

substantial, requiring 14 hours per week of services. (*Id.*)[7] Accordingly, given Plaintiff's vulnerable state and need for extensive care, it was reasonably foreseeable that HCHCA's decision to sever its relationship with Plaintiff — after it had coordinated multiple meetings with Plaintiff, signed a Service Agreement, formulated a care plan, and actually begun rendering services for Plaintiff — would cause Plaintiff severe emotional distress.

HCHCA's Motion to Dismiss Count XI of the FAC will be denied.

### C. COUNT IV – VIOLATION OF NEW JERSEY CONSUMER FRAUD ACT

To state a claim under the New Jersey Consumer Fraud Act ("NJCFA"), N.J.S.A. 56:8-19, a plaintiff "must allege sufficient facts to demonstrate: (1) unlawful conduct; (2) an ascertainable loss; and (3) a causal relationship between the unlawful conduct and the ascertainable loss." *Smajlaj v. Campbell Soup Co.*, 782 F. Supp. 2d 84, 97 (D.N.J. 2011) (citing *International Union of Operating Engineers Local No. 68 Welfare Fund ("IUOEL 68") v. Merck & Co.,* 192 N.J. 372, 929 A.2d 1076, 1086 (2007)). The NJCFA is designed to address "sharp practices and dealings in the marketing of merchandise and real estate whereby the consumer could be victimized by being lured into a purchase through fraudulent, deceptive or other similar kind of selling or advertising practices." *Daaleman v. Elizabethtown Gas Co.,* 77 N.J. 267, 390 A.2d 566, 569 (1978). "Unlawful conduct falls into three general categories: affirmative acts, knowing omissions, and violation of regulations promulgated under the Act." *Id.* at 97-98 (citing N.J. Stat. Ann. §§ 56:8–2, 56:8–4. The NJCFA is "remedial legislation which should be construed liberally." *Id.* Rule 9(b) of the Federal Rules of Civil Procedure applies to claims under the NJCFA. *See F.D.I.C. v. Bathgate,* 27 F.3d 850, 876–77 (3d Cir.1994) (affirming district court's application of Rule 9(b) to

[7] While Plaintiff alleges he received continued authorization of 14 hours per week of Home Aide services, (FAC at ¶ 4), the Service Agreement appears to authorize "14 hours of service 3 days per week." (Opp'n Br., ECF No. 10-1, Ex. A, "Service Agreement").)

Consumer Fraud Act claim); *Lemelledo v. Beneficial Mgmt.,* 150 N.J. 255, 264 (1997). Rule 9(b) requires a plaintiff to set forth specific facts that constitute the fraud. *See* Fed. R. Civ. P. 9(b).

"To constitute consumer fraud the business practice in question must be misleading and stand outside the norm of reasonable business practice in that it will victimize the average consumer." *Smajlaj*, 782 F. Supp. 2d at 98 (citing *New Jersey Citizen Action v. Schering–Plough Corp.,* 842 A.2d 174, 177 (N.J. Super. Ct. App. Div. 2003)); *see Gennari v. Weichert Co. Realtors,* 148 *N.J.* 582, 607-08 (1997) (finding that the NJCFA does not require proof of reliance and that defendant's agents misled, deceived, and damaged plaintiff). Plaintiff's NJCFA claim rests on allegations that HCHCA held itself out as a duly licensed home health care agency capable of providing certified aide services, including assistance with daily activities, household management, and pet care, (FAC at ¶ 43), but HCHCA (1) had an expired license and was not legally authorized to operate as a home health agency in New Jersey, and (2) misrepresented the scope of services it was willing to provide by restricting its aide to minimal housekeeping of patients' personal space and refusing to perform services expressly listed on its own website (specifically pet care), (*id.* at 44-45). These are textbook allegations of misleading business practices, pled with sufficient specificity, to form the basis for a plausible claim under the NJCFA.

HCHCA does not appear to dispute the alleged "wrongful conduct" itself. Instead, HCHCA argues that Plaintiff's NJCFA claim must be dismissed because "Plaintiff is not a direct purchaser of services from [HCHCA] and did not select HCHCA's services." (Moving Br. at 16). In essence, HCHCA's contention is that NJCFA claims require a plaintiff to ultimately be the purchaser of a defendant's product or service, even if indirectly, and because Plaintiff here did not technically "purchase" HCHCA's services, the claim is invalid. The Court disagrees with the premise of HCHCA's contention. Plaintiff is insured by UHC and became eligible for Home Aid

Services through UHC in February 2025. (FAC at ¶¶ 1, 4.) UHC authorized HCHCA to perform such services for Plaintiff. (*Id.* at ¶ 5.) These allegations imply a contractual relationship between UHC and HCHCA whereby HCHCA is referred to UHC-insureds like Plaintiff. That Plaintiff did not directly "purchase" services from HCHCA is inconsequential. Plaintiff purchased insurance with UHC and embalmed in that relationship rested the expectation that Plaintiff, a disabled individual eligible for Home Aid Services under his policy with UHC, would receive such services through UHC. On the other side of the coin, it is reasonable to find that HCHCA expected to be referred to eligible UHC-insureds, that those insureds would review HCHCA's website and offered services, and those insureds would expect HCHCA to be capable of rendering those services. This assessment comports with New Jersey precedent dictating that privity is not required to state a claim under the NJCFA. *Matera v. M.G.C.C. Group, Inc.*, 402 N.J. Super. 30, 41 (N.J. Super. Ct. Law Div. 2007) ("[A]lthough some nexus is necessary to establish a claim under the Consumer Fraud Act, that nexus need only be between the alleged unlawful conduct and the ascertainable loss; *it requires no contact between the parties*.") (emphasis added).

In sum, Plaintiff clearly alleges unlawful conduct, i.e., misleading statements on the website and in-person during an initial meeting with Plaintiff, and Plaintiff pleads a nexus between that conduct and an ascertainable loss, i.e., not receiving promised services, through either the parties' Service Agreement or Plaintiff's third-party insured status in connection with UHC's relationship with HCHCA.

HCHCA's Motion to Dismiss Count IV of the FAC will be denied.

**D. COUNT V – FRAUDULENT MISREPRESENTATION**

To state a claim for fraudulent misrepresentation, a plaintiff must allege: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the

other person; and (5) resulting damages." *Konover Constr. Corp. v. E. Coast Constr. Servs. Corp.*, 420 F. Supp. 2d 366, 370 (D.N.J. 2006) (quoting *Gennari v. Weichert Co. Realtors,* 148 N.J. 582, 610 (1997)).

Plaintiff's fraudulent misrepresentation claim is twofold: first, Plaintiff alleges that HCHCA misrepresented the scope of its household services offered to Plaintiff and the public, including pet care, (FAC at ¶ 50) and second, Plaintiff alleges that HCHCA misrepresented to Ms. Brooks, Plaintiff's UHC case manager, that HCHCA did not offer those services notwithstanding that they appear on HCHCA's website, (*id.* at ¶ 51.) Plaintiff's theory is that HCHCA made these misrepresentations to induce Plaintiff and Ms. Brooks to rely upon them, that Plaintiff and Ms. Brooks did in fact rely upon them, and when HCHCA refused to provide those services to Plaintiff, Plaintiff suffered damages. (*Id.* ¶¶ at 49-55.)

"[A]dvertisements are generally not considered offers." *El-Helw v. Farleigh Dickinson University*, App. No. 2550-23, 2025 WL 2588375, at *8 (N.J. Super. Ct. App. Div. Sept. 8, 2025) (citing *Restatement (Second) of Conts.* § 26 cmt. b (A.L.I. 1981) (noting that general advertisements for services "are not ordinarily intended or understood as offers" and that "there must ordinarily be some language of commitment or some invitation to take action without further communication" to make them so)); *Schlichtman v. N.J. Highway Auth.*, 243 N.J. Super. 464, 468-69 (N.J. Super. Ct. Law. Div. 1990) ("Generally it is considered unreasonable for a person to believe that advertisements . . . are offers that bind the advertiser.") (quoting *Mesaros v. United States*, 845 F.2d 1576, 1581 (Fed. Cir. 1988).

Indeed, the terms of an advertisement must be sufficiently definite on its face for the advertisement to constitute an offer. *See Jackson v. Manasquan Sav. Bank*, 271 N.J. Super. 136, 143 (N.J. Super. Ct. Law. Div. 1993) (finding that an advertisement could "be viewed only as an

invitation to the public" because it "contain[ed] no specific terms that would form the basis of an offer"). Plaintiff claims that HCHCA's website advertising for pet care and other services constitutes actionable misrepresentations to him and the general public; Plaintiff separately alleges HCHCA made misrepresentations to Ms. Brooks that HCHCA, though the Court has trouble deciphering Plaintiff's contention on this point. Nonetheless, HCHCA advertised general services it was capable of providing on its website, but Plaintiff and HCHCA also signed a Service Agreement that specifically does not list pet care as even a service option for Plaintiff. Plaintiff cannot show a misrepresentation on this point, much less that he relied on it to his detriment. Plaintiff's fraudulent misrepresentation claim, insofar as it is founded on HCHCA's website advertising, does not pass muster.

To the extent that Plaintiff also alleges that HCHCA represented *to him* that it would provide certain services such as pet care, the Court similarly finds that Plaintiff fails to plead a fraudulent misrepresentation claim. At the outset of the parties' relationship, Plaintiff and Oksana, an HCHCA care manager, discussed that his Home Aid Services needed to include pet care, and Oksana did not express any issue with that request. (FAC at ¶ 8.) Plaintiff relied on that representation, and a few days later he was informed by Irene, an RN supervisor at HCHCA, that HCHCA would not provide such services. (*Id.* at ¶ 10.) But Plaintiff nonetheless confirms that he signed the Service Agreement—and consented to the scope of services outlined in the "Plan of Care" form — at that meeting with Irene. Plaintiff does allege that he relied on Oksana's initial representation as to the full scope of the services that HCHCA was offering to provide: Oksana subsequently began providing Home Aid Services to Plaintiff on behalf of HCHCA by picking up his medicine. (*Id.* at ¶ 11.) However, Plaintiff fails to allege that Oksana knew or believed at the

time of her initial meeting with Plaintiff that HCHCA would not or could not provide pet care for him. Accordingly, Plaintiff has not stated a claim for fraudulent misrepresentation.

Count V will therefore be dismissed without prejudice.

### E. COUNTS VIII, IX, & X – VIOLATIONS OF SECTION 504 OF THE REHABILITATION ACT, THE AMERICANS WITH DISABILITIES ACT, AND THE NEW JERSEY LAW AGAINST DISCRIMINATION

Plaintiff brings Counts VIII (Violation of Section 504 of the Rehabilitation Act ("RA"), 29 U.S.C. § 794, and Title II of the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12132), Count IX (Violation of the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5-12(f)), and Count X (Violation of the ADA / Olmstead Integration Mandate and Section 504 of the RA) against HCHCA, alleging that HCHCA is liable for failing to accommodate his disability.

To establish a prima facie case under the ADA, a plaintiff must allege that he or she (1) had a disability, (2) was otherwise qualified to participate in the activity or program at issue, and (3) was denied the benefits of the program or otherwise discriminated against because of his or her disability. *J.T. v. Dumont Pub. Sch.*, 438 N.J. Super. 241, 248 (App. Div. 2014). Similarly, NJLAD requires a plaintiff to show that an "agent or employee of any place of public accommodation directly or indirectly to refuse, withhold from or deny to any person any of the accommodations, advantages, facilities or privileges thereof or to discriminate against any person in the furnishing thereof." *Franek v. Tomahawk Lake Resort*, 333 N.J. Super. 206, 213 (App. Div. 2000) (quoting N.J.S.A. 10:5-12).

Plaintiff alleges that HCHCA is a "health care entity" that is subject to the RA, ADA, and NJLAD – a contention that HCHCA does not dispute. The Court thus turns to the alleged reasons for HCHCA's denial of services to Plaintiff. The sole factual allegation that Plaintiff sets forth in any of these Counts that could cognizably support his disability discrimination claims is that HCHCA "refused or withheld services in part because of conditions related to the presence of

domestic animals and household odor, rather than any legitimate health-or-safety restriction[,]" and that HCHCA failed to make reasonable modifications to its policies or practices "such as scheduling adjustments, ventilation, or protective measures [ ] that would have permitted service delivery without undue burden, and instead abandoned Plaintiff at a critical post-surgical period." (FAC at ¶¶ 83-84.)

HCHCA argues that even assuming these allegations are true, as the Court is required to do at this stage, they do "not suggest discriminatory animus based on a protected characteristic such as [Plaintiff's] disability" and Plaintiff alleges no other "discriminatory action or inaction as pretext for denying Plaintiff home care services." (Moving Br. at 18–19.) In opposition, Plaintiff contends that any unsanitary conditions which caused HCHCA to decline to provide services are "a manifestation of his disability" and as such should harness liability under the RA, NJLAD, and ADA because HCHCA had a duty to make reasonable accommodations under NJLAD and the integration mandate established in *Olmstead v. L.C.*, 527 U.S. 581 (1999). (Opp'n Br. at 11–13.) HCHCA argues in reply that this purported connection is, at best, tenuous, and that the integration mandate established in *Olmstead* does not apply because the FAC is devoid of any claim that Plaintiff is entitled to receive services in a community or institutional setting. (Reply Br. at Point E.)

The Court agrees with Plaintiff that, as alleged, the FAC states claims under the RA, ADA, and NJLAD insofar as HCHCA failed to make reasonable steps to accommodate Plaintiff's disability and need for Home Aid Services based on "conditions related to the presence of domestic animals and household odor." To be sure, part of the contemplated services included, among other things, "Light Cleaning of patient personal area" (Opp'n Br., ECF No. 10-1, Ex. A, at "Plan of Care") and Oksana, HCHCA's care manager for Plaintiff, specifically did not express any issue

with Plaintiff's request for pet care as part of his Home Aid Services at the parties' initial meeting. (*Id.* at ¶ 8.) To be clear, while these allegations may be sufficient to defeat a motion to dismiss, the Court nonetheless expresses concern over the tenuous connection between Plaintiff's disability and the purported unsanitary conditions that he has alleged were the stated reason for HCHCA's decision not to proceed with Home Aid Services, especially considering that the Service Agreement provides that HCHCA may terminate the relationship for an "[u]nsafe environment." (Opp'n Br., ECF No. 10-1, Ex. A, "Service Agreement".)

HCHCA's Motion to Dismiss Counts VIII, IX, and X of the FAC will be denied.

## VII. CONCLUSION

For the reasons stated above, the Court will **GRANT IN PART and DENY IN PART** Defendant's Motion to Dismiss. An appropriate Order will follow.

Date: September 30, 2026

s/ Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**